1          UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3    ANJITA GURUNG,
                                  Case No. 1:23-cv-06362-OEM-PK
4              Plaintiff,

5    v.                            Brooklyn, New York
                                  December 15, 2023
6    METAQUOTES LTD., et al,       10:06 a.m.

7              Defendants.


8

         TRANSCRIPT OF TELEPHONIC INITIAL CONFERENCE HEARING
9              BEFORE THE HONORABLE PEGGY KUO
             UNITED STATES MAGISTRATE JUDGE
10
     APPEARANCES:
11   For the Plaintiff:         Ross MacPherson, Esq.
                                Mark Cianci, Esq.
12                              Ropes & Gray, LLP
                                Prudential Tower
13                              800 Boylston Street
                                Boston, MA 02199
14
                                Karina Thomas, Esq.
15                              Ropes & Gray, LLP
                                2099 Pennsylvania Ave, NW
16                              Washington, DC 20006

17                              Shong Yin, Esq.
                                Ropes & Gray, LLP
18                              1900 University Ave FL 6
                                East Palo Alto, CA 94303-2284
19
     For the Defendants:        Joshua B. Simmons, Esq.
20   (MetaQuotes Ltd. and       Wiley Rein, LLP
     MetaQuotes Software Corp.) 2050 M St., NW
21                              Washington, DC 20036

22                              Spencer Brooks, Esq.
                                Wiley Rein, LLP
23                              1776 K St NW
                                Washington, DC 20006

24

25

```
 1   For the Defendant:          Brian L. Grossman, Esq.
     (Forexware, LLC)            Reinhardt Savic Foley, LLP
 2                               200 Liberty St FL 27
                                 New York, NY 10281-1076
 3
     Clerk:                      R.O.
 4
     Court Recorder:             Electronic Sound Recording
 5
     Transcription Service:      Chris Hwang
 6                               Abba Reporting
                                 PO Box 223282
 7                               Chantilly, Virginia   20153
                                 (518) 302-6772
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25
```

# INDEX

Page

Court's Ruling            18

1    (Call to order at 10:06 a.m.)

2    THE CLERK:  This is for initial conference by

3    telephone, docket 33-CV-6362, Anjita Gurung v. MetaQuotes,

4    Ltd., et al., Magistrate Judge Peggy Kuo presiding.  Will the

5    parties present please state their appearances, beginning with

6    the Plaintiff?

7    MR. MCPHERSON:  Good morning, Your Honor, this is

8    Ross McPherson for the Plaintiff Anjita Gurung.  I'm also

9    joined by my colleagues Mark Cianci, Shong Yin, and Karina

10    Thomas.

11    MR. SIMMONS:  Good morning, Your Honor, this is Josh

12    Simmons of Wiley Rein, appearing on behalf of MetaQuotes, along

13    with my colleague Spencer Brooks of Wiley.  Thank you.

14    MR. GROSSMAN:  Good morning, Your Honor, this is

15    Brian Grossman from Reinhardt Savic Foley, appearing on behalf

16    of Defendant Forexware.

17    THE COURT:  All right, good morning, everyone.  We're

18    here for an initial conference.  And I know that there's a

19    dispute among the parties as to whether discovery should go

20    forward or not at this point.

21    But before I make a decision on that, I'd like to

22    hear more about the case and if discovery were to go forward

23    what that would look like.

24    So I'll give each side an opportunity to tell me a

25    little bit more about their case.  I've read the pleadings so

1    far, but obviously, there may be things that are not contained

2    in what's been filed already that you would like to bring to my

3    attention.

4         So let me start with the Plaintiff.  And then, we'll

5    move on to each of the Defendants.

6         Mr. McPherson, why don't you start?

7         MR. MCPHERSON:  Thank you, Your Honor.  This case

8    relates to a financial scam called a pig butchering scam.  Pig

9    butchering scams are often coordinated by organized crime in

10   Asia.  These criminal organizations often engage in human

11   trafficking to create an army of scammers who seek to scam

12   individuals out of their money.

13        It's purportedly led to more than a billion dollars

14   of losses in the United States alone and has led to indictments

15   in the Eastern District of New York and as recently as this

16   morning in the Central District of California.

17        The scams are called pig butchering because the

18   criminals use these online platforms to fatten up their victim

19   by developing a relationship of trust, and then enticing them

20   to participate in increasingly expensive investment schemes

21   that are entirely fraudulent.  Then they butcher them by taking

22   their money.

23        The Plaintiff Anjita Gurung is a victim of one of

24   these pig butchering schemes.  Mr. Gurung fled Nepal in 2011

25   due to political violence and oppression and received asylum in

1    the United States.

2         She was forced to leave her family and her friends

3    behind and has only seen them once in the last 12 years.

4         She found work as a live-in nanny in Connecticut, but

5    due to her job and her limited proficiency with English and

6    isolation of the Covid-19 pandemic, it made it difficult for

7    her to make friends and keep community.

8         Dealing with this extreme loneliness, in 2021, Ms.

9    Gurung turned to social media to make new friends.  She met a

10   man named Connor Smith (phonetic), who is the John Doe

11   Defendant in this case.  After talking for several weeks, Mr.

12   Smith finally launched his investment scheme.

13        Smith encouraged Ms. Gurung to make investments on

14   the MetaTrader Platform, which I'll call the MT 5 Platform.

15   That platform was created, maintained, and operated by the

16   Metaquotes Defendants who are here today.

17        Smith directed Ms. Gurung to convert her funds into

18   cryptocurrency, deposit those funds with specific broker-

19   dealers who are listed on the platform, and promised her

20   substantial returns.

21        In light of everything that she had gone through, Ms.

22   Gurung was sold on the scheme because to provide her and her

23   family better lives.

24        Over the next few months, Ms. Gurung saw massive

25   returns her MT 5 trading application.  She invested more and

1  more money and took loans from friends and family to invest

2  even more.

3          All told, she invested $600,000 in this scheme, but

4  it was all fraudulent.  Similar to online trading applications

5  like Robinhood or Fidelity or Vanguard, the MT 5 trading

6  platform can provide real-time information the price of assets

7  and it allows users to trade in stocks and other assets.

8          To make these trades, the user can select from one of

9  several broker-dealers who are listed on the platform.  Those

10  broker details included the Defendant's brokers as named in the

11  complaint.

12          While the MT 5 application seemed legitimate, Ms.

13  Gurung alleges that the MT 5 platform also uses a software

14  plug-in developed by Defendant Forexware that allows users like

15  the broker-dealers to manipulate the market prices and account

16  balances shown on the MT 5 trading platform.

17          The -- Ms. Gurung alleges that the broker-dealers

18  used this plug-in to change the market prices for assets that

19  she purchased.

20          As a result, they were able to inflate her account

21  balances and profits to entice her to invest more.  All the

22  while, the John Doe Defendant was continuing to encourage Ms.

23  Gurung to invest more and more in the seemingly profitable

24  scheme.

25          At bottom, Ms. Gurung's allegations are simple.  The

1    John Doe Defendant preyed on her at her weakest moment to

2    entice her into an investment scheme that promised a better

3    life for her and her oppressed family.  He directed her to

4    broker-dealers Defendants, who were able to manipulate the

5    trading data on the MT 5 platform based on the plug-in provided

6    by Defendant Forexware and sold by the MetaQuote Defendants.

7         And by using the plug-in developed by Forexware, the

8    broker-dealer Defendants were able to create a mirage of

9    success that masked the reality that they were stealing her

10   money.

11        All told, she lost $600,000 and suffered severe

12   psychiatric distress as a result.

13        But turning to the -- Your Honor, would you like me

14   to turn to the arguments in the motion to stay at this point?

15        THE COURT:  Why don't I hear from everybody?  And

16   then, we'll turn to the specifics of what discovery is being

17   requested at this point as to, yeah, why don't we pause here?

18   Okay?

19        MR. MCPHERSON:  Thank you, Your Honor.

20        THE COURT:  Thank you.

21        So Mr. Simmons?

22        MR. SIMMONS:  Thank you, Your Honor.  As you have

23   heard, Plaintiff claims that the actions of an unnamed John Doe

24   and several financial brokers scammed her out of her funds.

25        But the allegations against MetaQuotes are lacking in

1    merit, they're brought in the wrong forum, and they would

2    inappropriately render software providers, you heard mention

3    Robinhood and others, exposed to claims based solely on the

4    conduct of person who independently utilized the software.

5            More importantly for purposes of the motion to

6    dismiss and the motion to stay discovery, the complaint admits

7    that Plaintiff accepted the MetaQuotes end user license

8    agreement as a condition for downloading the MT 5 software.

9            The clause provides that any legal action or

10   proceeding arising under this agreement shall be subject to the

11   exclusive jurisdiction of the courts of the Republic of Cyprus,

12   and specifically to the extent permitted by law, the District

13   Court of Limassol.

14           Plaintiff's claims against MetaQuotes arise from her

15   alleged use of the MT 5 software and are therefore subject to

16   this mandatory clause and they should be dismissed pursuant to

17   foreign nonconvenien.

18           We, pursuant to the scheduling order, will be serving

19   a motion to dismiss today that also explains the reasons for a

20   dismissal for lack of personal jurisdiction, a failure to state

21   a claim under Rules 12(b)(2) and 12(b)(6).

22           However, the analysis can stop with the foreign

23   selection clause that is mandatory and reasonable in this case.

24   Thank you.

25           THE COURT:  Okay, thank you.

1           And Mr. Grossman?

2           MR. GROSSMAN:  Good morning, Your Honor.  I'll be

3     very brief as Forexware does not have the foreign nonconveniens

4     arguments that Defendants MetaQuotes have.  So we are remaining

5     neutral on the motion to stay discovery.

6           In terms of the actual merits of this case, Forexware

7     joins with MetaQuotes's argument that it would essentially

8     expand the tort liability, as well as federal civil statutes in

9     terms of what software providers can be brought in despite

10    having enough to do with the actions of users to those

11    software.

12          Forexware will also be serving a motion to dismiss

13    today that will mostly outline 12(b)(6) arguments on failure to

14    state a claim for all of Plaintiff's allegations at least as to

15    Forexware, including demonstrating, you know, a complete and

16    utter failure in Forexware's opinion to allege a RICO claim

17    against Forexware mostly, but as well as with MetaQuotes.

18          THE COURT:  All right, thank you.

19          So, Mr. McPherson, let me just circle back to you.

20    Are you saying that the MT 5 platform was created with the

21    intent to facilitate fraud?  Or I'm not entirely sure how its

22    function in terms of facilitating fraud that occurred here?

23          MR. MCPHERSON:  Yes, Your Honor.  So that is

24    precisely what we're alleging.  We're alleging that MetaQuotes

25    has intentionally operated this platform in a way that

1    contemplates the ability to use its plug-in to manipulate the

2    appearance of account balances and prices on the platform.

3            Since as early as 2014, MetaQuotes has been aware

4    that these sorts of financial scams have been perpetrated as

5    alleged in the complaint.

6            And these have become, you know, there has been

7    significant reporting on this issue specifically with respect

8    to MetaTrader.

9            So, yes at this stage, we are arguing that they

10   intentionally are operating the platform in a way that allows

11   this sort of financial scam to occur.

12           THE COURT:  Uh-huh, okay.  And the whole issue of the

13   due diligence, whether the brokers were licensed or not, I'm

14   again -- is that -- is it your allegation that that's part of

15   the make-up of this platform, that that can happen?

16           MR. MCPHERSON:  Yes, so our allegation is that the

17   MetaTrader application allows users to connect with the broker-

18   dealers, so they can actually place their trades.

19           As part of that, they have failed to engage in

20   appropriate diligence for these broker-dealers.  As you know,

21   we have named several of the broker-dealer Defendants that

22   interacted with Ms. Gurung in the complaints.  We're attempting

23   to engage in service on them, but they appear in some respects

24   to be sham entities.

25           And they do not appear to have passed significant

1  diligence.  And so, our position is that MetaQuotes has failed

2  to uphold its bargain to make sure that these broker-dealers

3  are legitimate entities that can place trades on behalf of its

4  users.

5  THE COURT:  Okay, thank you.  So let's turn to the

6  issue of discovery.  I'm hearing that the reason that

7  MetaQuotes is saying that discovery should be stayed is that

8  the whole case should occur in Cyprus, rather than in the

9  Eastern District of New York.  Is that basically it, Mr.

10  Simmons, or is there another basis?

11  MR. SIMMONS:  Thank you, Your Honor.  Yes, it would

12  defeat the purpose of the motion to dismiss for foreign

13  nonconvenien if discovery were to proceed given the mandatory

14  clause in the end user license agreement.

15  THE COURT:  Uh-huh.

16  MR. SIMMONS:  But this is specifically for the claims

17  against MetaQuotes.  So the other claims, we don't have a

18  position on that, but for the claims against MetaQuotes,

19  there's a mandatory foreign selection clause --

20  THE COURT:  Right.

21  MR. SIMMONS:  -- providing that these claims are

22  subject to the exclusive jurisdiction of the courts of Cyprus.

23  THE COURT:  Right.  And if the case were to go to

24  Cyprus, what is your understanding of the procedure there?  Would

25  there be discovery?

1          MR. SIMMONS:  I would need to -- I have no reason to

2    doubt that there would be discovery.  I'm not personally

3    familiar with the procedural laws in Cyprus, but I currently

4    have no reason to doubt that.

5          THE COURT:  Okay, okay.  So Mr. McPherson, let me

6    hear from you why you think discovery should move forward now?

7          MR. MCPHERSON:  Sure.  In terms of the discovery that

8    we seek to serve on all the parties, it's focused on four

9    issues.  One is to get a better understanding of the nature of

10   the Defendant's relationships with one another.

11         Second is to develop a stronger understanding of the

12   design and the implementation of the MetaTrader software and

13   or, excuse me, the Forexware plug-in on the MetaTrader

14   software.

15         Additionally, we would want to serve discovery on

16   MetaQuote's policies and procedures about how they operate

17   their software and how they're in compliance with their

18   policies and procedures.

19         And lastly, to get a better understanding of how they

20   have responded to these pervasive allegations of fraud on the

21   platform.  These areas of discovery are necessary in two

22   respects.

23         One is to provide information that would assist

24   Plaintiff in identifying the John Doe Defendant and as well as

25   the broker-dealer Defendants because currently, the Plaintiff

1  Ms. Gurung is taking steps to identify these individuals who

2  are also engaged in this financial scheme.

3         So, for that reason, this discovery is necessary.

4  And we would note that this discovery is essential and it is

5  discovery that we would like to see as soon as possible because

6  each day that passes makes it more and more difficult for us to

7  identify the John Doe Defendants and to get access to the

8  broker-dealer.  But more importantly, to recover the funds that

9  have been stolen and are now being disbursed throughout the

10  markets.

11         Turning to the motion to stay itself, Ms. Gurung

12  opposes the motion to stay because the motion to dismiss on

13  foreign nonconveniens grounds is not a meritorious motion to

14  dismiss.

15         Here, the form selection clause is plainly

16  unenforceable because it would be unreasonable and unjust and

17  therefore -- but it would excuse me, it would be unreasonable

18  and unjust to enforce this foreign selection clause against Ms.

19  Gurung because she would be unable to litigate in Cyprus.

20         As we -- as I noted previously, Ms. Gurung is an

21  asylee from Nepal.  She does not speak the official language in

22  Cyprus, which is Greek.  And she does not have the capacity to

23  obtain a lawyer in Cyprus.

24         Additionally, due to her green status, it would be

25  incredibly difficult for her to gain permission to travel to

1   Cyprus.  And it's entirely possible that she cannot attend her

2   own trial.

3          On the contrary, Defendant is a business that has

4   purposely entered the stream of commerce in the United States

5   and New York in particular and has been able to obtain counsel

6   in this case and in previous cases.

7          There's a stark contrast here.  On the one hand, Ms.

8   Gurung cannot litigate her claims if they're transferred to

9   Cyprus.  On the other hand, MetaQuotes will have every

10  possibility to defend itself here in the United States and in

11  this Court.

12         As to the burden and prejudice, our prejudice

13  arguments that MetaQuotes has raised, we think that those are

14  unavailing.

15         As discovery is still a few weeks away as the parties

16  have to agree to the ESI protocol for MetaQuotes in particular,

17  Plaintiff will need to receive their initial disclosures.

18         And likewise, as I foregrounded this argument, the

19  prejudice is a key.  Every day that Ms. Gurung does not receive

20  discovery from these parties is another day that it becomes

21  less and less likely that she can identify the other Defendants

22  that have perpetrated this financial scheme against her.  Thank

23  you.

24         THE COURT:  All right, thank you.  And then, I'll

25  hear from each of the Defendants.  Do you know want to respond,

1    Mr. Simmons?

2            MR. SIMMONS:  Thank you, Your Honor.  Yes, we

3    disagree first on the merits of the motion to dismiss.  Again,

4    we will be serving that today.

5            But Plaintiff effectively has conceded the

6    application of the foreign selection clause and the arguments

7    as to any alleged financial hardships under New York case law

8    cannot overcome, but the case against MetaQuotes should receive

9    in Cyprus pursuant to the claim and unambiguous terms of that

10   clause.

11           Also, in terms of burden, MetaQuotes is a company

12   based in Cyprus.  It does not have operations or offices

13   anywhere in the United States.

14           And there would be inefficiencies and defeating the

15   purpose of the foreign nonconveniens motion if discovery were

16   allowed to proceed.

17           That's particularly true here, given what you have

18   just heard in terms of the breadth of the type of discovery

19   sought.

20           The complaint has a wide range of claims and there

21   seems clearly to be an effort to use this litigation in New

22   York despite the foreign selection clause to pursue that

23   discovery.

24           And finally and perhaps the most importantly here, we

25   disagree that Plaintiff will suffer prejudice if discovery

1   against MetaQuotes is stayed.

2          Obviously, this case is at the very earliest stages.

3   Documents are being preserved by MetaQuotes.  These are recent

4   events for which memories are unlikely to fade and many of the

5   Defendants have not yet been served.

6          Also, as the current discovery -- joint discovery

7   plan shows, discovery can proceed against the U.S.-based

8   Defendant Forexware.  And so, it will not be a complete

9   cessation of discovery.

10          And finally, I would note just in terms of timing,

11   that we have a relatively efficient briefing schedule for the

12   motion to dismiss, which will be complete by January 29th.

13          And even the current joint discovery plan does not

14   contemplate that discovery would start until March 29th.  So

15   again, we think that there's no prejudice to Plaintiff,

16   documents are being preserved, and the motion for a stay of

17   discovery should be granted pending a decision on the motion to

18   dismiss.  Thank you.

19          THE COURT:  All right, thank you.

20          And then, Mr. Grossman?

21          MR. GROSSMAN:  Your Honor, this is Brian Grossman for

22   Forexware.  We take no position on the motion to stay.

23          THE COURT:  Okay, thank you.

24          All right, so thank you, everybody, for your very

25   helpful arguments.  I find that there is no need to stay

1    discovery in this case.

2            The motion to dismiss by MetaQuotes is to change the

3    venue of the case.  And it sounds like even if that were

4    granted, there would be discovery that would be necessary.  And

5    so, I don't see a reason to not get moving on the discovery.

6            Even if the motion to dismiss is fully briefed by the

7    end of January, it sounds like you raise some very or somewhat

8    complicated points.  And so, I don't anticipate that a

9    motion -- a decision on the motion will happen immediately.

10           And so, I -- you know, maybe it could, but this

11   proposed scheduling order as has been pointed out doesn't

12   contemplate that the formal discovery would happen in any

13   event, until the end of March.  So I think that gives everybody

14   some breathing space in the next couple of months before the

15   formal discovery starts.

16           And I think by the end of the March, people -- the

17   parties should start exchanging information and making requests

18   and that kind of thing so the case can move forward.

19           So let me just look at this plan.  As I pointed out,

20   the initial requests and interrogatories go out -- would at the

21   end of March.  You're contemplating here six months for fact

22   discovery, which I hope is not overly optimistic, but I'm glad

23   that the parties are being diligent or will be diligent.

24           And then, you are also contemplating some expert

25   discovery that will follow that.  And you are looking at

1    settlement discussions following the conclusion of expert

2    discovery, which is fine.

3          I have not scheduled any settlement conferences in

4    2025 yet, but let me just take a look.  I assume that I am

5    available on the date that you've picked, but I just want to

6    make sure that doesn't fall on a weekend, but hold on a second.

7          So, February 2nd, 2025 is the date.  Oh, in fact,

8    it's a Sunday.  So I don't think that's what you want.  I can

9    schedule you for February 4th, 2025, which is a Tuesday, right?

10    And I'll say --

11          MR. MCPHERSON:  Your Honor, this is Ross McPherson

12    for the Plaintiffs.  That will be acceptable to us.

13          THE COURT:  Okay, so it would be 2 o'clock in the

14    afternoon, Eastern time.  And I prefer to have these in person,

15    but I recognize that parties and counsel are in different

16    locations.

17          And so, I will just ask the parties to talk about

18    what the best forum is, whether it be in person, by video, or

19    by telephone.  So I'll leave that open-ended because it is

20    quite a bit in the future.

21          And then, let me just see if there are other dates

22    that need to be discussed.  There is the deadline for

23    identification of the Jane Doe, John Doe Defendants.

24          I think this is on the scheduling order for the

25    parties to be discussing that issue.  And so, the fact that

1    you've discussed it is good.

2           I don't think having a deadline makes sense given

3    that the John Doe party here is the alleged scammer, which

4    might make that person hard to find.  So I don't think putting

5    a deadline on it makes sense.

6           I think as we get closer to the end of discovery and

7    any possible trial here, we might put a firm deadline on, you

8    know, if the person is not identified by before this date, then

9    that's it, but I think at this point, it's a little bit hard to

10   say.  So I will leave it open-ended pursuant to what the

11   Plaintiff is requesting.

12          Yes, did you --

13          MR. GROSSMAN:  Your Honor, this is Brian Grossman for

14   Forexware.  May I just make one point on that?

15          THE COURT:  Sure.

16          MR. GROSSMAN:  As to Forexware, and I personally had

17   to deal with identifying a John Doe previously, in terms of

18   actually discovering and identifying this John Doe, really

19   Forexware's main concern is that it -- they don't want this

20   waiting and being delayed and then having to essentially

21   restart discovery again after everything else has been done.

22          Forexware's really just asking for kind of a diligent

23   search to begin as to John Doe, which can certainly and then

24   seemingly would have to occur outside of discovery with

25   MetaQuotes and Forexware.

1          THE COURT:  Right.

2          MR. GROSSMAN:  I think that, you know, not trying to

3    tell the Plaintiffs how to do their job, but in terms of

4    subpoenas to things like Internet service providers to Tinder,

5    where they supposedly met, among other, you know, WhatsApp,

6    Telegram, the other entities named in the complaint that are

7    not parties to this case, I think, you know, a diligent

8    subpoena process with those entities is what needs to occur.

9          And that's all we're asking here is that that begin

10   sooner rather than later so we don't have to repeat the

11   discovery process once John Doe is identified.

12         THE COURT:  Okay, that makes sense.  And so, I -- it

13   sounds like Plaintiff has incentive to move forward quickly.

14   And if Forex (sic) has concerns about the diligence with which

15   that's happening, you can certainly have those discussions and

16   bring to the Court's attention any problems that you see on

17   that front, okay.

18         So I think I agree with you that the search for the

19   John Doe identity should be diligent and cooperative as far as

20   any of the parties here so far.

21         But if you think that there are some issues there,

22   please -- well, let's put it this way.  Ms. McPherson, please

23   keep everybody updated on your efforts there both for seeking

24   their assistance if necessary.  And then, also just so they're

25   updated and know and understand what you're doing to discern

1   who the John Doe is, okay?

2         MR. MCPHERSON:  Certainly, Your Honor.  And I can

3   assure the Court that we have taken substantial steps already

4   to attempt to identify the John Doe Defendant with respect to

5   third-party discovery that would becoming in the next few weeks

6   as we --

7         THE COURT:  Uh-huh.

8         MR. MCPHERSON:  -- (indiscernible) issues on our end.

9         THE COURT:  Okay.

10        MR. MCPHERSON:  So, as Your Honor mentioned, we have

11  every intention to pursue a diligent search.

12        THE COURT:  Right, and I understand also from some of

13  the letters that have been filed that Forexware is cooperating

14  in that, and so, that's good to hear as well.

15        And also, if you need the Court's assistance in terms

16  of the third-party subpoenas, please make those applications as

17  quickly as possible.

18        It's my practice to turn to those matters of urgency

19  very quickly so that you can be assured that there won't be

20  delay on that front, okay.

21        MR. MCPHERSON:  Thank you.

22        THE COURT:  So I think the rest of this looks fine.

23  What then I will do is enter this order as the scheduling order

24  in this case, because I'm required to have a scheduling order

25  in cases unless there's a stay.

1        And this will then constitute the schedule that the

2   parties need to comply with as you move forward.  If you need

3   any extensions, please file a joint request for an extension of

4   time, stating clearly what the basis is and any future

5   deadlines that also need to be adjusted.

6        And as I mentioned earlier, I will turn to those

7   requests expeditiously that you'll have clear answers as you

8   move forward.

9        If there are any discovery requests that cannot be

10  resolved among the parties, please make a joint request for

11  court intervention.  And that should include every

12  parties -- every appearing party's position on the matter in

13  dispute.

14       I will usually schedule a telephone call very quickly

15  so I can find out what's going on, and then, resolve it.

16       If I can't resolve it on the telephone call, I will

17  ask for further briefing or for the filing to flesh out the

18  issues, but don't file a motion to compel in the first instance

19  because it's usually not necessary and it's more efficient to

20  just get everybody on the phone, all right?

21       So just let me know through a joint letter that you

22  need to have a phone call to discuss the discovery dispute and

23  I will turn to it as quickly as I can.

24       All right, so I will be looking for then a update on

25  the status of discovery sometime in the midpoint of your

1  discovery schedule, well, at least the fact discovery schedule.

2         So will be about June of next year.  I will say by

3  June 21st, the parties should file a joint status report

4  letting me know how discovery's going.  And then, if there are

5  any disputes that have arisen at that point, you can bring them

6  to my attention.

7         But if everything's going great, you can just say

8  everything is on track and we're likely to meet the schedule.

9  Okay, so even though the discovery will not be starting

10 officially until March 29th, I encourage the parties to talk to

11 each other, exchange information that you know is going to need

12 to be requested, and you know, try to help each other flesh out

13 your respective cases sooner rather than later.

14        I would also encourage you even though you don't have

15 a discovery -- I'm sorry, a settlement plan until the end of

16 all discovery, that you start talking about what possibilities

17 there are to resolve the case.

18        And even though I scheduled this settlement

19 conference for more than a year from now, if you want it

20 sooner, I'm open to that.

21        You can make a joint request for that as well.  Not

22 starting discovery until the end of March gives you a lot of

23 space to talk about the case at this early stage and see where

24 you can maybe find some common ground.

25        All right, so I'm open to that and always looking for

1   the parties to reach out and let me know that you're ready to

2   talk.

3           All right, so Mr. McPherson, anything else for the

4   Plaintiff?

5           MR. MCPHERSON:  No, nothing further, Your Honor.

6           THE COURT:  Okay, Mr. Simmons?  Mr. Simmons?

7           MR. SIMMONS:  No, Your Honor.

8           THE COURT:  Okay.  And Mr. Grossman?

9           MR. GROSSMAN:  Nothing further from Forexware, Your

10  Honor, thank you.

11          THE COURT:  All right, thank you very much everyone.

12  Have a good weekend.

13          MR. GROSSMAN:  Thank you Your Honor.  You --

14      (Proceedings concluded at 10:37 a.m.)

15

16

17

18

19

20

21

22

23

24

25

# CERTIFICATE

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_____          January 17, 2024
Chris Hwang                        Date
Court Reporter