UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANJITA GURUNG

                Plaintiff,                         **MEMORANDUM AND ORDER**
                                                      1:23-cv-06362-OEM-PK

          -against-

METAQUOTES LTD., a Cyprus corporation;
METAQUOTES SOFTWARE CORP.,
*a Bahamas corporation*; METAQUOTES
SOFTWARE CORP., *a Delaware corporation*;
FOREXWARE LLC, *a Delaware Limited
Liability Company*; SICH CAPITAL LTD,
*a United Kingdom corporation*; OPSON
INTERNATIONAL TECHNICAL SERVICE
CO., LTD., *a Hong Kong corporation*; VOREX
TRADING LLC, *a Georgia corporation*;
SOPHIE CAPITAL FINANCIAL TRADING
LTD, *a Canadian corporation*; and JOHN DOE,

                Defendants.
----------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

      On August 24, 2023, plaintiff Anjita Gurung ("Plaintiff") brought suit against MetaQuotes,

Ltd. ("MetaQuotes Cyprus"), MetaQuotes Software Corp. ("MetaQuotes Bahamas," together with

MetaQuotes Cyprus "the MSC Defendants"), MetaQuotes Software Corp. ("MetaQuotes

Delaware"), Forexware LLC ("Forexware"), SICH Capital Ltd. ("SICH"), Opson International

Technical Service Co., Ltd. ("Opson"), Vorex Trading LLC ("Vorex"), Sophie Capital Financial

Trading Ltd. ("Sophie" together with SICH, Opson, and Vorex the "Broker Defendants"), and

John Doe (together with the MSC Defendants, Metaquotes Delaware, Forexware, and the Broker

Defendants, the "Defendants"), bringing claims arising under (1) the Racketeer Influenced and

Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962(c) and (d), (2) fraud, (3) conspiracy to

commit fraud, (4) breach of contract and breach of implied covenant of good faith and fair dealing,

(5) unjust enrichment, (6) negligence, (7) negligent misrepresentation, (8) products liability, (9) conversion, (10) aiding and abetting conversion, (11) New York's deceptive trade practices act, (12) violations of New York's false advertising law, (13) negligent infliction of emotional distress, and (14) intentional infliction of emotional distress. *See generally* Plaintiff's Complaint ("Compl."), ECF 1.  Before the Court are the MSC Defendants' motion to dismiss, filed on January 30, 2024, and Forexware's motion to dismiss, filed on January 30, 2024.  For the reasons that follow, both motions to dismiss are granted.

## BACKGROUND

Plaintiff alleges that Defendants willfully and knowingly conspired to engage in 30 related counts of wire fraud, as part of a larger pattern of racketeering activity spanning 8 months, to carry out a "Pig Butchering Enterprise" with the purpose of defrauding and profiting off the Plaintiff. *Id.* at 18-20, 22.  Plaintiff is an asylee from Nepal and has lived alone in the United States since 2011.  *Id.* at 10.  Plaintiff alleges that she first met John Doe, purporting to be Connor Smith ("Smith"), on social media in 2021.  *Id.*  After speaking on WhatsApp, Smith allegedly encouraged Plaintiff to download the MSC Defendants' MT5 trading platform ("MT5"), supported by Forexware's software, onto her smartphone from Apple, Inc.'s App Store and offered to assist her with trading in the currency and commodities markets.  *Id.* at 11, 15.  Upon downloading MT5, Plaintiff agreed to the MT5 End User License Agreement ("MT5 EULA").  *Id.* at 16.

MT5 is the MSC Defendants' proprietary software application that enables foreign exchange and cryptocurrency trading by connecting brokers to a user's computer or smartphone. *Id*. at 15.  Plaintiff alleges that MT5 is "supported by Forexware's software" and that Forexware charges a monthly fee for software support and maintenance.  *Id*. at 15.

The MSC Defendants allegedly directly sell license agreements to use the MT5 platform to brokerages ("Licensees").  *Id.* at 16.  Plaintiff alleges that the MSC Defendants conduct due diligence procedures for Licensees prior to directly selling a license agreement to a broker.  *Id*. Licensees are free to sell license agreements to the MT5 platform, called "White Labels," to individuals and entities purporting to be brokerages.  *Id*.  Those who obtain "White Labels" from a Licensee may then themselves sell license agreements to the MT5 platform, called "Gray Labels," to other individuals and entities purporting to be brokerages.  *Id*.  Plaintiff alleges that "[d]iligence procedures for White Labels and Gray Labels not obtained from [the MSC Defendants] are up to Licensees and are not conducted by [the MSC Defendants]."  *Id*.  The MT5 platform allegedly "displays [to users] all brokers that have obtained licenses to MT5, whether directly from [the MSC Defendants] or from a White Label holder."  *Id*.

Smith allegedly directed Plaintiff to select the Broker Defendants from MT5's menu of licensed brokers and open accounts with certain cryptocurrency exchange platforms.  *Id.* at 11. Smith allegedly told Plaintiff to contact what Plaintiff believed to be the Broker Defendants' customer service representatives via the Telegram application to obtain a digital wallet address to fund her MT5 account, which Plaintiff believed was legitimate because the balances of funds sent to the digital wallet appeared on the MT5 application.  *Id.* at 11, 12.

Through a series of transactions spanning several months, Plaintiff transferred hundreds of thousands of dollars to the digital wallet that she believed was linked to her MT5 trading account and sent the individuals that Plaintiff believed to be the Defendant Brokers' customer service representatives a series of large payments that Plaintiff was led to believe were for taxes and fees. *Id*. at 12-14.  The MT5 interface allegedly showed each of Plaintiff's transactions and purported profit and loss values of the transactions.  *Id*. at 12.

However, Plaintiff alleges that the Defendant Brokers were in fact "illegitimate entities" which had disguised themselves as brokerages and used the MT5 platform to manipulate Plaintiff's user account balance and display "false profit and funds information" to Plaintiff. *Id*. at 17-18. After several months and numerous transactions, Plaintiff alleges that she "realized that she had fallen victim to a scam and demanded that the Defendants Brokers' representative with whom she was communicating over Telegram to return her funds." *Id*. at 14. By that point, Plaintiff had transferred $596,708 to what she believed was her MT5 trading account, approximately $576,708 of which was borrowed from friends, family, and creditors. *Id*. Plaintiff's funds were never returned. *Id*.

Plaintiff alleges that MT5, through Forexware's software, allows illegitimate entities to manipulate user account balances, displaying false profit and funds information to victims like Plaintiff. *Id.* at 17-18. Plaintiff alleges that the MSC Defendants and Forexware are aware of the criminal activity on MT5. *Id*.

Plaintiff brings claims arising under the RICO Act along and a variety of other claims against the Defendants. The MSC Defendants move pursuant to *forum non conveniens* and Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiff's claims in their entirety. *See* MSC Defendants' Memorandum of Law in Support of Motion to Dismiss ("MSC MOL"), ECF 45 at 1. The MSC Defendants contend that Plaintiff's claims are subject to a forum selection clause in the MT5 EULA that requires Plaintiff's claims to be litigated in the Republic of Cyprus. *Id*. Plaintiff opposes the MSC Defendants' motion to dismiss pursuant to *forum non conveniens*, contending that Plaintiff's non-contract claims are not subject to the Cypriot Forum Selection Clause in the MT5 EULA. Opposition to the Defendants' Motion to Dismiss ("Opp."), ECF 49 at 1, 6-7.

4

Forexware moves pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims in their entirety on grounds that Plaintiff failed to adequately allege that Forexware was part of an enterprise or agreed to commit wire fraud as required for Plaintiff's RICO Act claim. Memorandum of Law in Support of Defendant Forexware LLC's Motion to Dismiss the Complaint ("Forexware MOL"), ECF 42-1 at 6. Plaintiff opposes Forexware's motion to dismiss pursuant to 12(b)(6), contending that she has adequately pled Forexware's involvement in a RICO enterprise and pattern of racketeering activity. Opp., 18, 22.

## DISCUSSION

### I.    MSC's Motion to Dismiss

#### A.    <u>Forum Selection Clause</u>

The MSC Defendants contend that the MT5 EULA's forum selection clause ("FSC") requires Plaintiff to bring her claims in the Republic of Cyprus and that Plaintiff's claims should thus be dismissed pursuant to *forum non conveniens*. MSC MOL at 1. The MSC Defendants argue that the FSC applies to all of Plaintiff's claims because each relates to her use of the MT5 software. *Id.* at 4, 7. The MSC Defendants further contend that enforcing the MT5 EULA is reasonable and fair because litigating in Cyprus would not deprive Plaintiff of her day in court and Cyprus constitutes an adequate alternative forum. *Id.* at 8, 9.

In opposition, Plaintiff contends that the Court should deny the MSC Defendants' motion to dismiss pursuant to *forum non conveniens* because the FSC is inapplicable and unenforceable. Opp. at 6. Plaintiff claims that the FSC's narrow language does not cover her non-contract claims because these claims do not arise under the MT5 EULA and are rather based on rights guaranteed by federal law. *Id.* at 6-7, 9. Plaintiff further argues that the FSC is unenforceable because it is unreasonable and unjust. *Id.* Plaintiff contends that litigating in Cyprus would deprive Plaintiff

of her day in court because Plaintiff lacks the requisite funds and allegedly cannot legally leave the United States while her permanent residency application is pending. *Id.* at 10. Moreover, Plaintiff contends that Cyprus is an inadequate alternative forum because Cyprus does not recognize some of Plaintiff's claims. *Id.* at 11.

The Court finds that the MT5 EULA's FSC applies to Plaintiff's non-contract claims against the MSC Defendants because Plaintiff's non-contract claims and breach of contract claim are grounded in the same facts and thus jointly arise under the FSC. Compl. at 23, 30.

In order to establish the FSC's presumptive validity, MSC Defendants must demonstrate that the FSC was "[1] reasonably communicated to the party resisting enforcement, [2] is mandatory and not merely permissive, and [3] covers the claims and parties involved in the suit." *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835, 839 (S.D.N.Y. 2017) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)). If a court finds that a forum selection clause is presumptively enforceable, the court then asks "[4] whether the [plaintiff] has rebutted that presumption by making a sufficiently strong showing that enforcement would be unreasonable or unjust." *Palm Bay Int'l, Inc. v. Winebow Grp., LLC*, No. 18-CV-1094(JMA)(SIL), 2018 WL 5776266, at *2 (E.D.N.Y. Nov. 1, 2018) (citing *Donnay USA Ltd. v. Donnay Int'l S.A.*, 705 F. App'x. 21, 23 (2d Cir. 2017)) (cleaned up).

*(1) The FSC was reasonably communicated:*

Plaintiff agreed to the following forum selection clause in the MT5 EULA: "Any legal action or proceeding arising under this Agreement shall be subject to the exclusive jurisdiction of the courts of the Republic of Cyprus and specifically, to the extent permitted by law, the District Court of Limassol." MSC MOL at 4.

The Court first inquires whether the FSC was reasonably communicated to the Plaintiff. "A FSC 'is reasonably communicated if it is phrased in clear and unambiguous language.'" *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 290 (S.D.N.Y. 2018) (quoting *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F.Supp.2d 597, 604-05 (E.D.N.Y. 2011)), *aff'd*, 785 F. App'x 18 (2d Cir. 2019).

Plaintiff admits that she agreed to the MT5 EULA upon downloading MSC Defendants' MT5 application to her smartphone. See Compl. at 7; Opp. at 3. Plaintiff has also acknowledged that the EULA contains a forum selection clause. Opp. at 1. In *Lazare*, the court found that "clear and unambiguous" language and being in its own paragraph was sufficient for a forum selection clause to provide notice to the plaintiff. 337 F. Supp. 3d at 290. Much like in *Lazare*, this FSC is set off in its own section with the heading "Applicable Law and Competent Court." *Id.*; Declaration in Support of Motion to Dismiss ("Decl."), Ex. A. The FSC's language is clear and unambiguous, providing that the Republic of Cyprus will have "exclusive jurisdiction" over "[a]ny legal action arising under" the MT5 EULA. MSC MOL at 4. Finally, Plaintiff has not contested that the FSC was reasonably communicated. *See generally* Compl. and Opp.; *Lazare*, 337 F. Supp. 3d at 290-91.

*(2) The FSC is mandatory*

"Whether a forum selection clause is mandatory depends on its language, and generally courts will not enforce a clause that specifies only jurisdiction in a designated court without any language indicating that the specified jurisdiction is exclusive." *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 434 (E.D.N.Y. 2014) (citing *Salis v. Am. Exp. Lines*, 331 Fed. App'x. 811, 813 (2d Cir. 2009) (summary order)).

First, the FSC's use of the word "exclusive" suggests that the FSC is mandatory. *See Phillips*, 494 F.3d at 386; *see also Paduano*, 55 F. Supp. 3d at 434.  Moreover, the FSC provides that "[a]ny legal action…shall be subject to the exclusive jurisdiction of the courts of the Republic of Cyprus."  MSC MOL at 4.  In *Paduano*, the court held that the language 'be litigated' after 'shall' "reinforces the mandatory quality of [a] forum selection clause," which mirrors the language and structure of the FSC.  *Paduano*, 55 F. Supp. 3d at 433.  Thus, the Court finds the FSC to be mandatory.

### (3) The FSC covers Plaintiff's non-contract claims

The court next inquires as to whether the FSC "covers the claims and parties involved in the suit."  *Thyssenkrupp Materials NA, Inc.*, 236 F. Supp. 3d at 839.  Along with various state law claims, Plaintiff brings claims under the RICO Act and for breach of contract.

"'The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use.'"  *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09 CIV. 7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) (quoting *Universal Grading Serv. v. eBay*, Inc., No. 08-CV-3557 (CPS), 2009 U.S. Dist. LEXIS 49841, at *50 (E.D.N.Y. June 9, 2009)) (citations omitted).  This district has previously interpreted the terms "arising out of," "relating to," and other similar language appearing in forum selection clauses to "regularly… encompass securities, antitrust, and tort claims associated with the underlying contract" in addition to breach of contract claims.  *Paduano*, 55 F. Supp. 3d at 433 (quoting *Russbeer Int'l LLC v. OAO Baltika Brewing Co.*, No. 07-CV-1212 (CBA), 2008 WL 905044, at *4 (E.D.N.Y. Mar. 31, 2008)) (cleaned up).

Courts in the Second Circuit examine the language of forum selection clauses to gauge their scope.  *See Lazare*, 337 F. Supp. 3d at 291.  To determine whether a forum selection clause

applies to a plaintiff's non-contract claims, "[t]he Second Circuit [has] analyzed the substance of [a] plaintiff's claims 'shorn of their labels.'" *Palm Bay Int'l, Inc*, 2018 WL 5776266, at *3 (quoting *Phillips*, 494 F.3d at 388) (citations omitted). "Courts consider whether the non-contract claims 'ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involv[e] the same operative facts as a parallel claim for breach of contract.'" *Lazare*, 337 F. Supp. 3d at 291 (quoting *Direct Mail Prod. Servs., Ltd. v. MBNA Corp.*, No. 99-cv-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000)) (citations omitted).

Plaintiff argues that the FSC does not cover her non-contract claims because these claims do not arise under the EULA. Opp. at 7. Plaintiff further contends that the "arising under" language in the FSC warrants a narrow interpretation and that the FSC should not apply to her non-contract claims. *Id*. at 6. The MSC Defendants contend that the FSC covers Plaintiff's non-contract claims because her non-contract claims depend on her use of the MT5 software and that Plaintiff's claims originate from allegations arising under the EULA. The MSC Defendants' Reply Memorandum of Law in Support of Motion to Dismiss ("MSC Reply"), ECF 47 at 3-4. Specifically, Plaintiff alleges that MSC Defendants breached the following provision in the EULA: "INVOLVED DIRECTLY OR INDIRECTLY IN ANY RESPECT IN ANY COMMISSION BASED PAYMENTS CONCERNING ANY TRADING OPERATIONS WHATSOEVER." *Id.* at 4. The MSC Defendants claim that Plaintiff's non-contract claims, whereby Plaintiff alleges that the MSC Defendants engaged in a fraudulent and negligent scheme to generate revenue from the MT5 platform by permitting illegality on its platform, similarly stem from the same allegations underlying Plaintiff's breach of contract claim. *Id.*

"[A] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship."  *Direct Mail Prod. Servs., Ltd.*, 2000 WL 1277597, at *6 (quoting *Anselmo v. Univision Station Group, Inc.,* No. 92 Civ. 1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993)) (cleaned up).  Here, it is clear that Plaintiff's claims have "grow[n] out of the contractual relationship" with the MSC Defendants and that the "gist" of her non-contract claims involve a breach of the MT5 EULA.  *Id.*  The alleged "Pig Butchering Enterprise" could not have been accomplished without Plaintiff's use of MT5, her agreement to the MSC Defendants' EULA, and the MSC Defendants' purported breach of contract.  *See generally* Compl.

Moreover, the same exact course of conduct that Plaintiff challenges as a breach of contract underlies her other claims against MSC Defendants.  In furtherance of her non-contract claims, Plaintiff contends that MSC Defendants engaged in a scheme to improperly generate revenue from the MT5 platform by permitting illegal activity to take place on the platform, which comprises the same factual allegations underlying her breach of contract claim.  *See* Compl. 23, 30.  Because Plaintiff's claims "'involv[e] the same operative facts as a parallel claim for breach of contract,'" *Direct Mail Prod. Servs., Ltd.*, 2000 WL 1277597, at *6 (quoting *Lambert v. Kysar*, 983 F .2d 1110, 1121-22 (1st Cir.1993)), the Court finds that the FSC applies to Plaintiff's non-contract claims and contract claims alike.

Although the FSC uses the language "arising under this Agreement," which courts have typically interpreted more narrowly to only encompass claims contemplated in the contract, *see Palm Bay Int'l, Inc*, 2018 WL 5776266, at *3, when a plaintiff bases non-contract claims in the same facts underlying that plaintiff's breach of contract claims, this district has held that a narrow

10

forum selection clause can cover those non-contract claims.  *See Paduano*, 55 F. Supp. 3d at 433.

Because the operative facts underlying Plaintiff's non-contract and breach of contract claims are

the same, in this context the Court "find[s] no substantive difference in the present context between

the phrases 'relating to," "in connection with" or "arising from."  *Roby v. Corp. of Lloyd's*, 996

F.2d 1353, 1361 (2d Cir. 1993).  Moreover, when plaintiffs have brought breach of contract claims

with ancillary claims, courts in this Circuit have held that forum selection clauses cover all claims.

*Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 949 (S.D.N.Y. 1994).

Plaintiff's cited cases to the contrary are not as compelling.  Unlike in *Palm Bay*, the

adjudication of Plaintiff's claims other than her breach of contract claim would involve

determining whether the contract was breached.  In other words, while the court in *Palm Bay* found

that the underlying recording contract would remain undisturbed if the plaintiff prevailed on his

copyright claims, finding in favor of Plaintiff's non-contract claims would implicate a favorable

finding for Plaintiff's breach of contract claims.  *See Palm Bay Int'l, Inc*, 2018 WL 5776266, at

*3.  Moreover, *S-Fer Intern., Inc. v. Paladion Partners, Ltd.* does not apply here because the *S-Fer*

plaintiff sought rescission of a lease based on fraud in the inducement, which naturally occurred

before the lease was signed.  906 F. Supp. 211, 214 (S.D.N.Y. 1995).  Here, in contrast, Plaintiff's

claims arise out of a course of conduct that took place subsequently to her use of MT5 and

agreement to the EULA.

Accordingly, because the Court finds that the FSC covers Plaintiff's non-contract claims,

the MSC Defendants have established the FSC's presumptive validity.

*(4) The FSC is Enforceable*

Having found that the FSC is presumptively valid and covers Plaintiff's non-contract

claims, the Court now turns to the enforceability of the FSC.  A party opposing the application of

a valid FSC "bears a heavy burden in overcoming a presumptively enforceable forum selection clause," and in all but "the most unusual cases the interest of justice is served by holding parties to their bargain." *Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014).  As the Supreme Court has held, a forum selection clause "is prima facie valid and should be enforced unless enforcement . . . [would be] so manifestly and gravely inconvenient to [the moving party] that it will be effectively deprived of a meaningful day in court." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19 (1972).

Plaintiff contends that the FSC is unenforceable because litigating in Cyprus would deprive Plaintiff of her day in court: Plaintiff alleges that she lacks the requisite funds to litigate in Cyprus, that she would have to secure Cypriot counsel and Greek translation services, and that she cannot legally leave the United States while her permanent residency application is pending.  Opp. at 10.  Plaintiff also contends that Cyprus is an inadequate alternative forum because Cyprus does not recognize some of Plaintiff's claims.  *Id*. at 11.

Plaintiff's arguments for the inconvenience of litigating in Cyprus substantially mirror the district court holding overturned by the Second Circuit in *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995).  The district court in *Effron* found a forum selection clause binding an American plaintiff to litigate in Greece would deny the plaintiff her day in court, finding compelling Plaintiff's allegations that "[plaintiff] cannot afford to travel to Greece. She would be afraid to stay in a strange city where she does not know the language and customs. She is partially disabled and would have to hire someone to assist her physically. She does not know any Greek lawyers, and is ignorant of the Greek legal system. She cannot afford to hire a Greek interpreter. All of her witnesses live in the United States, and she cannot afford to pay for them to travel to Greece to testify." *Effron v. Sun Line Cruises, Inc.*, 857 F. Supp. 1079, 1081–82 (S.D.N.Y. 1994),

12

*rev'd in part*, 67 F.3d 7 (2d Cir. 1995).  The Second Circuit overturned this ruling, noting that "[a] plaintiff may have his 'day in court' without ever setting foot in a courtroom" and finding that the forum selection clause "should not be negated unilaterally by plaintiff's conclusory assertions that she cannot afford to travel to Greece, that she would be afraid to stay at a strange city, that she does not know any Greek lawyers, etc.  Unsupported statements such as these do not meet the 'heavy burden of proof' required to set aside a forum-selection clause on the ground of inconvenience." *Effron*, 67 F.3d 7 at 11.  The Court finds that the Second Circuit's holding in *Effron* applies here, and that Plaintiff has not sufficiently alleged that enforcing the Cypriot forum selection clause would be so inconvenient so as to deny Plaintiff her day in court.[1]

Plaintiff's contention that Cyprus is an inadequate forum because Cyprus does not recognize Plaintiff's RICO Act claims does not fare any better.  "[T]he courts of Cyprus constitute an adequate alternative forum," *La Sala v. Bank of Cyprus Public Co. Ltd.*, 510 F. Supp. 2d 246, 256 (S.D.N.Y 2007), and Plaintiff's inability to pursue RICO Act claims in Cyprus does not render its courts inadequate because "[t]he availability of an adequate alternate forum does not depend on the existence of the identical cause of action in the other forum." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).

Because the Court finds that the forum selection clause is valid, covers all of Plaintiff's claims against the MSC Defendants, and is enforceable, Plaintiff's claims against the MSC Defendants are dismissed without prejudice for *forum non conveniens*.

---

[1] Plaintiff's allegation that she cannot leave the country during the pendency of her application for permanent residency rings hollow and does not differentiate this case from *Effron*: Plaintiff has the ability to apply for travel documents that would permit her to leave the country temporarily without abandoning her permanent residency application. *See* While Your Green Card Application Is Pending with USCIS, United States Citizenship and Immigration Services (Jan. 31, 2020), https://www.uscis.gov/green-card/while-your-green-card-application-is-pending-with-uscis (last accessed Aug. 8, 2024).

## II.        Forexware's Motion to Dismiss

Forexware moves to dismiss Plaintiff's claims against it on the basis that Plaintiff has failed to adequately plead her RICO Act claims against Forexware.  *See generally* Forexware MOL.  In her Complaint, Plaintiff alleges that Forexware willingly and knowingly conspired with the purpose of defrauding and profiting off Plaintiff in a "Pig Butchering Enterprise" by providing the Broker Defendants with a platform that allowed them to make fraudulent misrepresentations to Plaintiff.  Compl. 18-20, 22.  Plaintiff alleges that, "[o]n information and belief," Forexware's software is "essential" for carrying out the "Pig Butchering Enterprise" because it allowed "illegitimate entities" to manipulate account balances.  *Id*. at 17-18.  Plaintiff further contends that Forexware is aware of the criminal activity on the MSC Defendants' MT5 platform.  *Id*.

In its motion to dismiss, Forexware contends that Plaintiff has not adequately pleaded a RICO violation or conspiracy to violate RICO and that her RICO claims should thus be dismissed for failure to state a claim pursuant to 12(b)(6).  Forexware MOL at 1.  Although Plaintiff alleges that Forexware provided the MSC Defendants with software for MT5, Forexware contends that Plaintiff has failed to allege that Forexware is part of an enterprise, engaged in a pattern of racketeering activity, or part of a conspiracy with others in violation of the RICO Act.  Forexware MOL, 7-15.  Finally, Forexware contends that Plaintiff has failed to allege any financial benefit to Forexware except for a purported monthly fee that Forexware claims it would receive regardless of any purported involvement in a racketeering enterprise.  Memorandum of Law In Reply and Further Support of Motion to Dismiss ("Forexware Reply"), ECF 43 at 5-6.

As an initial matter, the Court finds that Plaintiff's RICO claims against Forexware independently fail because she has failed to sufficiently allege a RICO enterprise.

*(1) Standard of review*

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A court must review a motion to dismiss under Rule 12(b)(6) by "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Nevertheless, a court need not assume that legal conclusions set out in the complaint are true. *See Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861 (MKB)(RML), 2021 WL 960394, at *6 (E.D.N.Y. Mar. 15, 2021), *aff'd*, No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022)

For RICO claims to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must offer 'more than labels and conclusions' in pleading the non-fraud elements." *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

*(2) RICO enterprise*

The RICO Act prohibits "any person employed by or associated with any enterprise" affecting international or interstate commerce from participating "in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "'To establish a civil RICO claim, a plaintiff must allege: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation.'" *Curtis v. Greenberg*, No. 20-CV-824 (PKC) (LB), 2021 WL 4340788, at *7 (E.D.N.Y.

Sept. 23, 2021), *aff'd*, No. 22-252-CV, 2023 WL 6324324 (2d Cir. Sept. 29, 2023) (quoting *Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013)) (internal citations omitted).

"The RICO statute defines 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *D'Addario v. D'Addario*, 901 F.3d 80, 100 (2d Cir. 2018) (quoting 18 U.S.C. § 1961(4)). "An association-in-fact enterprise 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *D. Penguin Bros.*, 587 F. App'x at 667 (quoting *Boyle v. United States*, 556 U.S. 938, 945 (2009)) (internal citations omitted). An association-in-fact enterprise must have "'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Petroff Amshen LLP*, 2021 WL 960394, at *9 (quoting *Boyle*, 556 U.S. at 946).

Here, Plaintiff's allegations concerning Forexware's involvement in the enterprise are merely conclusory: she alleges that Forexware "provide[s] its software integration into MSC's MT5 platform," Compl. at 2-3, that Forexware and the MSC Defendants "license and sell services to" the Broker Defendants, *id*. at 5, that Forexware, the MSC Defendants, and the Broker Defendants collectively "committed, or aided and abetted John Doe in committing, [sic] fraud," *id*. at 7, that Forexware "provides supporting software as well as software support and maintenance, for which Defendants MSC and Forexware charge a monthly fee," *id*. at 16. The bulk of Plaintiff's allegations against Forexware either take the form of un-particularized, general references to the collective acts of Defendants or the form of a series of vague references to "Forexware's software contributions" to the MT5 platform. *See id*. at 17. Because these

conclusory allegations do not permit a reasonable inference that Forexware shared the common purpose of defrauding Plaintiff or relationships with other members of the enterprise, Plaintiff has failed to adequately plead Forexware's participation in a RICO enterprise.  *See Town of Mamakating, N.Y. v. Lamm*, No. 15-CV-2865 (KBF), 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015), *aff'd sub nom*, *Town of Mamakating, New York v. Lamm*, 651 F. App'x 51 (2d Cir. 2016) (dismissing plaintiff's RICO claims because plaintiff failed "to explain the specific details of any hierarchy, organization, or unity among the various alleged conspirators in any non-conclusory way") (internal quotations marks and citations omitted).

### a.   Common purpose

To "'constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'"  *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y.1993)).

Plaintiff alleges that Forexware engaged in wire fraud with Defendants to achieve the "Pig Butchering Enterprise" whereby Defendants defrauded Plaintiff.  Compl. at 18-21.  In support of this allegation, Plaintiff claims that Forexware willfully or knowingly intended to engage in wire fraud by providing supporting software to MSC Defendants' MT5 trading platform, for which Forexware charges a monthly fee, enabling Broker Defendants to fraudulently misrepresent Plaintiff's account data.  *Id.* at 16, 21. Plaintiff also claims that Forexware profited off the enterprise.  Opp. at 24.

Forexware contends that Plaintiff fails to allege any common interest in the enterprise as to Forexware and that Plaintiff's statement of the enterprise's purpose is conclusory.  Forexware MOL at 7-8.  Forexware rebuts Plaintiff's assertion that Forexware profited off the enterprise,

contending that Forexware merely provides a service to the MSC Defendants and that Forexware would receive their same monthly fee unaffected by the existence of any alleged racketeering activity. *Id*. at 11; Forexware Reply at 2, 5-6.

The Court finds that Plaintiff's allegations do not amount to a plausible inference that Forexware shared the common purpose of engaging in wire fraud to defraud and profit off of Plaintiff. Plaintiff's conclusory allegations that Forexware intended to engage in wire fraud to further the enterprise's goal of defrauding the Plaintiffs, supported only by the specific factual allegations that Forexware provided software support to the MSC Defendants and earned a monthly fee in exchange, comprise "little more than a naked assertion devoid of further factual enhancement." *D. Penguin Bros.*, 587 F. App'x at 668 (holding that plaintiff's conclusory allegations of the enterprise's common purpose are insufficient to support a plausible inference of the enterprise's existence) (internal quotation marks and citations omitted).

Plaintiff's attempt to allege that Forexware "intended" to defraud plaintiff because Forexware derived financial gain from the enterprise falls flat given that Plaintiff's sole allegation concerning Forexware's financial gain is the existence of a monthly service fee. The allegation that Forexware engaged in a standard business transaction with the MSC Defendants, providing software support in exchange for a monthly fee, fails to provide a plausible inference of a common racketeering purpose shared by Forexware. *See id.* (finding that the plaintiff failed to plead a RICO enterprise when "the complaints fail to provide a plausible basis for inferring that [the defendants] acted 'on behalf of the enterprise as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests'" and stating that "[t]he complaints … create no plausible inference that they did so to advance the political agenda of their purported

'enterprise' or for any shared purpose.") (quoting *United Food & Comm. Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013)).

Courts in this Circuit have found no common purpose even where plaintiffs have made more substantial allegations than Plaintiff's own conclusory allegations here that Forexware knew about criminal activity on MT5 and that Forexware's software was essential to the success of the "Pig Butchering Enterpriser." *See J.T. v. de Blasio*, No. 20-CV-5878, 2020 WL 6748484, at *21 (S.D.N.Y. Nov. 13, 2020) (holding that "parallel conduct alone cannot support the inference that RICO defendants are joined together for a common purpose."); *see also D. Penguin Bros.*, 587 F. App'x at 668 (holding that, even though the plaintiff's complaints adequately pleaded that the defendants worked together in some regard to steal plaintiff's funds, these allegations still did not sufficiently advance a shared purpose to establish the existence of an enterprise).

Accordingly, the Court finds that Plaintiff fails to plead sufficient facts to support the assertion that Forexware shared the enterprise's common purpose of defrauding and profiting off Plaintiff.

### b. Relationships

To determine the existence of an association-in-fact enterprise, "courts examine […] whether members of the alleged enterprise have interpersonal relationships." *Dynarex Corp. v. Farrah*, No. 18 CV 7072 (VB), 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019).

Plaintiff makes the conclusory allegation that Forexware had relationships with other members of the enterprise essential to achieving the "Pig Butchering Scheme." Compl. at 18. In furtherance of this allegation, Plaintiff alleges that John Doe instructed Plaintiff to use the MSC Defendants' and Forexware's software and that the MSC Defendants and Forexware provided the essential tools for John Doe and the Defendant Brokers to defraud the Plaintiff. *Id.* at 19.

19

Defendants contend that Plaintiff failed to allege that Forexware had relationships with each member of the enterprise necessary to achieve the "Pig Butchering Scheme" in any non-conclusory manner.  Forexware MOL at 9.  Although Plaintiff alleges Forexware's relationship with the MSC Defendants whereby Forexware provides software to MSC Defendants' platform, Plaintiff has failed to allege relationships with any other members of the enterprise.  *Id.* at 9-10.

The Court finds that Plaintiff's allegations do not amount to a plausible inference that Forexware had interpersonal relationships with other members of the alleged enterprise other than MSC Defendants.  Although "'[f]ormal hierarchy, role differentiation, regular meetings, or established procedures are not required'" to establish the existence of an enterprise, *Petroff Amshen LLP*, 2021 WL 960394, at *9 (quoting *Boyle*, 556 U.S. at 948), "individuals who act 'independently and without coordination' may not be treated as part of a RICO association-in-fact."  *D'Addario*, 901 F.3d at 101 (quoting *Boyle*, 556 U.S. at 947 n.4).  "In other words, when each defendant is alleged to have a relationship with a central figure, but the defendants are not all alleged to be connected in some overarching way (such as by an agreement to further a single design or purpose)," the Second Circuit has not found the existence of an association-in-fact enterprise.  *Id.*

Here, Plaintiff has alleged that Forexware provides the MSC Defendants with software support, but her claims that Defendant Brokers and John Doe used Forexware's software to further the enterprise do not sufficiently plead that Forexware had interpersonal relationships with these defendants.  Rather, her claims suggest that Forexware acted "independently and without coordination," without connection to the other members of the enterprise other than a business relationship with MSC Defendants.  *Id.*  Even taking Plaintiff's conclusory allegation that Forexware was aware of criminal activity on MT5 as true, Plaintiff does not allege that Forexware

was aware of John Doe or the Broker Defendants specifically.  These allegations are insufficient to establish the relationship prong of Plaintiff's RICO claims.

Accordingly, the Court finds that Plaintiff fails to plead sufficient facts to support the assertion that Forexware had sufficient relationships with other members of the enterprise.

Because Plaintiff has failed to adequately allege that Forexware acted with a common purpose and engaged in relationships with the other defendants, Plaintiff has failed to adequately plead Forexware's participation in a RICO enterprise and the Court dismisses Plaintiff's RICO claims against Forexware.

*(3) RICO conspiracy claim*

Plaintiff has failed to establish a RICO conspiracy under 18 U.S.C. § 1962(d) as to Forexware.  Adequately pleading a RICO conspiracy claim requires that Plaintiff show Forexware's violation of Section 1962(c), *see Curtis*, No. 22-252-CV, 2023 WL 6324324, at *2 (2d Cir. Sept. 29, 2023) (holding that RICO conspiracy claims fail when plaintiffs insufficiently plead substantive RICO violations), which Plaintiff has failed to do.  *See infra* II(2).  Accordingly, Plaintiff's RICO conspiracy claims against Forexware are dismissed.

**III.    Forexware's state law claims**

Pursuant to Federal Rule of Civil Procedure 1367(c), a court may use its discretion to determine whether it will "exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. 1367(c)(3).  Because this Court has dismissed the claims against Forexware over which it has original jurisdiction, *see infra* II, the Court declines to exercise supplemental jurisdiction over any state law claims asserted against Forexware in Plaintiff's complaint.  Accordingly, Plaintiff's state law claims against Forexware are dismissed without prejudice.

21

## CONCLUSION

For the foregoing reasons, the MSC Defendants' motion to dismiss is granted and Forexware's motion to dismiss is granted.  The MSC Defendants and Forexware are hereby dismissed as parties to this action.

**SO ORDERED.**

_____/s/_____

ORELIA E. MERCHANT
United States District Judge

Dated: Brooklyn, New York
     August 16, 2024